1  EDWARD M. MCDONALD JR., Trial Attorney
   State Bar # NY 4126009                    E-Filed on June 6, 2011
2  *edward.m.mcdonald@usdoj.gov*
   **UNITED STATES DEPARTMENT OF JUSTICE**
3  Office of the United States Trustee
   300 Las Vegas Boulevard, So., Suite 4300
4  Las Vegas, Nevada 89101
   Telephone: (702) 388-6600 Attorney Ext. 234
5  Facsimile:  (702) 388-6658

6  Attorney for the Acting United States Trustee
          AUGUST B. LANDIS
7

8
                **UNITED STATES BANKRUPTCY COURT**
9
                    **DISTRICT OF NEVADA**
10
   In re:                              CASE NO: BK-**S-11-15145-MKN**
11
   **FREE AND CLEAR HOLDING**          Chapter 11
12 **COMPANY II, LLC,**
                                       Date:  July 13, 2011
13                                     Time:  9:30 a.m. (PT)
                                       Place:  Foley Courtroom 2 (third floor)
14

15
                              Debtor.
16

17
         **THE ACTING UNITED STATES TRUSTEE'S MOTION**
18
         **TO DISMISS DEBTOR'S BANKRUPTCY CASE**
19
         **PURSUANT TO 11 U.S.C. § 1112 (b)**
20
   To the Honorable MIKE K. NAKAGAWA, Chief United States Bankruptcy Judge:
21
         The Acting United States Trustee seeks dismissal of the bankruptcy case filed by debtor
22
   Free And Clear Holding Company II, LLC ("Debtor") under chapter 11 of the United States
23
   Bankruptcy Code.[1]  Cause exists for dismissal of Debtor's case pursuant to 11 U.S.C. §
24
   1112(b)(4).  Dismissal is therefore required under 11 U.S.C. § 1112(b)(1).
25
         The record before the Court does not appear to support any qualification of, or statutory
26

27
   _____
28       [1]    11 U.S.C. §§ 101-1532 (as amended).  The word "Code" as used in this Motion
                refers to the United States Bankruptcy Code.  The word "section" refers to the
                corresponding section of the Code unless otherwise noted.

defense to, the remedy of dismissal pursuant to sections 1112(b)(1)-(2) of the Code. Section 1112( c ) of the Code is not relevant here, as the Acting United States Trustee seeks dismissal, not conversion, of Debtor's bankruptcy case. The Acting United States Trustee therefore respectfully requests that the Court enter an order granting the motion, and dismissing Debtor's chapter 11 bankruptcy case.

The Acting United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the motion contains factual assertions predicated upon statements made by Debtor, its counsel or its agents in documents filed by Debtor in this bankruptcy case, at the 341 meeting of creditors, or in documents provided to the Office of the United States Trustee by Debtor, its counsel or its agents, the Acting United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

This motion is supported by the documents comprising the official court docket, the following memorandum of points and authorities, and any argument the Court may permit at the related hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### FACTS

1. Debtor is a corporate debtor. [*See* Docket No. 1, p. 1 of 98] According to the Nevada Secretary of State's website, Debtor is a Nevada limited liability company, formed on March 9, 2011, with Garth Johnson as the managing member. [*See* Exhibit 1 to the Declaration of Jim J Palmer ("Palmer Declaration") filed herewith].[2]

---

[2]    Garth Johnson is a manager of four other "Free and Clearing Holding" companies in Nevada:

    (1)    Free and Clear Holding Company, LLC, formed in Nevada on September 22, 2010;

    (2)    Free and Clear Holding Company III, LLC, formed in Nevada on

2.  On March 15, 2011, as the sole manager of the Debtor, Garth Johnson authorized Debtor to hire counsel (Amber Lea Davis and Christina DiEdoardo) to represent it in a chapter 11 bankruptcy case. [*See* Docket No. 7 (Corporate Resolution), p. 1 of 1]

3.  On April 6, 2011, twenty-eight days after it was formed, Debtor commenced this case by filing a voluntary petition ("Petition") for relief under section 301 of the Code. [Docket No. 1] Garth Johnson is Debtor's representative. [*See* Docket No. 1, p. 3 of 98]

4.  Debtor filed its schedules, statement of financial affairs and disclosure of attorney compensation with its Petition. [*See* Docket No. 1, pp. 7 - 74 of 98]  Debtor subsequently amended its Schedule A five times [*see* Docket Nos. 10, 12, 14, 15 & 17] and its Schedule D three times [*see* Docket Nos. 10, 12 & 16].

5.  Debtor's schedules and filings, as amended, show the following:

(A)  Debtor holds a 1/8th interest in each of 241 pieces of real property:  205 of the properties are located in California; 23 are located in Nevada; 5 are located in Texas; 3 are located in Washington; and, one each are located in North Carolina, Tennessee, Oklahoma, Florida, and Arizona. [*See* Docket No. 17 (Amended Schedule A), pp. 1 - 14 of 14] Debtor values the 1/8th interests in the 241 properties at $10,441,250. [*See* Docket No. 17 (Amended Schedule A), p. 14 of 14];[3]

(B)  Debtor's Schedule B indicates that it has no personal property. [*See* Docket No. 1, pp. 12 -14 of 98];

( C )  The 241 properties in which the Debtor holds a 1/8th interest are over-encumbered by $122,974,715.00 in secured debt. [*See* Docket No. 16 (Amended

_____

March 21, 2011;

(3)  Free and Clear Holding Company IV, LLC, formed in Nevada on April 11, 2011; and,

(4)  Free and Clear Holding Company V, LLC, formed in Nevada on April 11, 2011.

[*See* Exhibits 2 - 5 to the Declaration of Jim J Palmer ("Palmer Declaration") filed herewith].  Free And Clear Holding Company III, LLC, filed a bankruptcy case under Chapter 11 of the Code on May 27, 2011. [*See In re Free And Clear Holding Company III, LLC*, Case No. 11-18289-BAM (Bankr. D. Nevada filed May 27, 2011)]

[3]  Using Debtor's numbers, the total value of the 241 properties is therefore $83,530,000 ($10,441,250 x 8).

Schedule D), p. 105 of 105];

(D)     Debtor's Schedule E lists possible tax debts to the Internal Revenue Service and Nevada Department of Taxation of an unknown amount.  [*See* Docket No. 1, pp. 60-61 of 98]; and,

(E)     Debtor's Schedule F lists only one unsecured claim for $15,000, held by creditor "Secured Assets Group" which was incurred on January 17, 2011 for "Attorney's fees for Chapter 11 filing."[4] [*See* Schedule No. 1, p. 62 of 98].

6.  On Tuesday, May 3, 2011, Garth Johnson and Christina DiEdoardo appeared at the Office of the United States Trustee to attend an initial debtor interview.  [*See* Exhibit 6 to the Palmer Declaration; *see also* paragraphs 2 - 5 of the Palmer Declaration].  At the initial debtor interview, Ms. DiEdoardo produced a compact disk containing documents to Mr. Jim Palmer, pursuant to his request.  [*See* paragraph 4 of the Palmer Declaration].  During the course of the initial debtor interview, Mr. Palmer requested additional documents from the Debtor.  [*See* paragraph 5 of the Palmer Declaration].  The disk produced at the May 3rd initial debtor interview ("May 3rd Disk") contains an annotated index of the documents contained therein and also contains:

(A)     A 17 page operating agreement for Free and Clear Holding Company II, LLC;

(B)     Three pages of documents concerning the Debtor-In-Possession bank account;

( C )   A one page balance sheet and a one page profit/loss statement for the Debtor March-April 2011;

(D)     Two copies of the Nevada Secretary of State entry for the Debtor;

(E)     The 5 page letter the Office of the United States Trustee sent to the Debtor scheduling the initial debtor interview, which requests the production of certain documents and/or information from the debtor and provides certain information concerning United States Trustee quarterly fees;

---

[4]     Accordingly, the $15,000 unsecured debt to Secured Assets Group for the Debtor's bankruptcy attorneys was incurred 51 days <u>before</u> the Debtor was created on March 9, 2011. [*See also* Docket No. 1 (Statement of Financial Affairs), p. 69 of 98 at Item No. 9]  In addition, the "Disclosure of Compensation of Attorney for Debtor(s)" that was filed in this case indicates that the $15,000 was paid <u>directly</u> from unsecured creditor Secured Assets Group to Christina DiEdoardo, one of the attorneys representing Debtor. [*See* Docket No. 1, p. 74 of 98] Ms. DiEdoardo is sharing those fees with Amberlea Davis, the other attorney representing Debtor is this case. [*Id*.]

(F)     Sixty-Eight pages of insurance quotes for the real property held by the Debtor;

(G)    2,211 pages of unsigned leases between the former owners of pieces of real property (the majority of which are listed on Amended Schedule A [Docket No. 17]) and the non-debtor company entitled Free and Clear Holding Company, LLC; and

(H)    Names of land trusts holding pieces of real property (the majority of which are listed on Amended Schedule A [Docket No. 17]) and the former owners of the property, who are listed as trustors.

[*See* Exhibit 7 to the Palmer Declaration].

7.    On May 12, 2011 Garth Johnson testified under oath as the Debtor's representative at the meeting of creditors, convened pursuant to section 341(a) of the Code.  [*See* Transcript of 341 Meeting of Creditors ("341 Transcript"), conducted on May 12, 2011, attached as Exhibit 8 to the Palmer Declaration]

8.    In response to the requests for additional documents made by Mr. Palmer at the initial debtor interview, counsel for Debtor produced another compact disk to counsel for the Acting United States Trustee at the May 12th 341 meeting of creditors (the "May 12th Disk").  [*See* paragraphs 1 - 4 of the Declaration of Edward M. McDonald Jr. ("McDonald Declaration") filed herewith].  The May 12th Disk contains an annotated index of the documents contained therein and also contains:

(A)    The documents contained on the May 3rd Disk;

(B)    Eleven files consisting of 622 pages of Certificates of Trust for land trusts holding the real property on Debtor's Amended Schedule A [Docket No. 17];

( C )    Three additional pages of documents about the Debtor-In-Possession bank account;

(D)    A 10 page draft template of a "Declaration of Trust and Land Trust Agreement";

(E)    284 pages of insurance binders insuring the property listed on Amended Schedule A [Docket No. 17], none of which appear to include liability insurance;

(F)    Two exemplars of "Grant Bargain Sale Deeds" for the real property listed on Amended Schedule A;

(G)    A signed copy of a lease between a former owner of one of the pieces of real property (on Amended Schedule A [Docket No. 17]) and a non-debtor company entitled Free and Clear Holding Company, LLC;

(H)    Two exemplars of a limited power of attorney, one for California and one for

Nevada;

(I)     A 4 page draft service agreement between Secured Assets Group, LLC and Debtor; and,

(J)     Draft amendments to the Summary of Schedules, Schedule A and Schedule D.

[*See* Exhibit 9 to the Palmer Declaration].

9. Based on Garth Johnson's sworn testimony at the 341 meeting of creditors, the statements made on the record by Debtor's counsel, and the documents produced to the Acting United States Trustee by Debtor, the Debtor and this bankruptcy are part of a plan to prevent secured creditors, many of which are federally insured financial institutions, from foreclosing on approximately 241 distressed pieces of real property.

10.  Mr. Johnson and Debtor's counsel refer to the owners of several hundred pieces of real property[5] that were in foreclosure or about to enter foreclosure as "Darlas"[6]:

MR. JOHNSON: Got you. Okay. So Free and Clear II Holding Company is a bankrupt entity that puts into the Free and Clear II bankruptcy the 1/8 interest of the property from Darla Debtor –

MR. McDONALD: Darla Debtor is a fictitious name. It just means people with real property that's distressed, right?

MR. JOHNSON: That's distressed properties, yes.

[341 Transcript, p. 16:17-25]

MR. McDONALD: And by distressed, it was real property where the lenders were foreclosing on the property, right?

MR. JOHNSON: Or potentially foreclosing at some point, pre-foreclosure.

---

[5]     The most recent Amended Schedule A [Docket No. 17] has 241 properties on it, however during the 341 meeting of creditors, Mr. Johnson testified that there were 267 properties.   [341 Transcript, pp. 34:12-14] References to the "241," "267," or "271" properties are to the group of hundreds of pieces of real property involved in this bankruptcy case.

[6]     The Darlas appear to have been located by Secured Assets Group, LLC, the Debtor's sole unsecured creditor, which appears to have made its money by charging the "Darlas" for drafting trust documents, limited powers of attorney, grant deeds, leases, etc. [*See* 341 Transcript, pp. 45:24 - 46:17; 54:2-13; 55:21-25; and, 56:5-17]

[341 Transcript, p. 34:7-11]

11. The "Darlas," or owners of the distressed real property, conveyed their ownership to hundreds of land trusts, which in turn conveyed a 12.5% ownership interest in each piece of property to the Debtor:

> MR. McDONALD: 267? So 267 owners of distressed real property, they convey their ownership of the property to a land trust.
>
> MS. DiEDOARDO: 267 land trusts.
>
> MR. McDONALD: 267 land trusts, and then those 267 land trusts transfer an eighth interest in the 267 properties to Free and Clear Holding Company II, LLC, right?
>
> MS. DiEDOARDO: Correct.
>
> MR. McDONALD: Right, Mr. Johnson?
>
> MR. JOHNSON: Correct, sir. That is correct.

[341 Transcript, p. 23:5-16]  The 1/8th interest transfers to Debtor all took place on April 6, 2011, the Petition Date. [341 Transcript, p. 25:11-17; *see also* Docket No. 16; *see also* Exhibit 10 to the Palmer Declaration] Garth Johnson is the trustee of the approximately 241 land trusts. [*See, e.g.,* Exhibit 10 to the Palmer Declaration].

12. The distressed property, which was formerly owned by the "Darlas," will be leased back to them:

> MS. DiEDOARDO: Well, all those leases to Darla Distressed.
>
> MR. McDONALD: Well, I guess we never got to the leases. So the land that's held by the land trust -- I guess the land that's held by the land trust, the 90 --
>
> MS. DiEDOARDO: 92 percent.
>
> MR. McDONALD: 88 percent -- the 88 percent that's held by the land trust and the 12 percent that's held by the debtor is all leased to the distressed homeowner.
>
> MS. DiEDOARDO: Yes.

[341 Transcript, p. 63:14-25]

13. Debtor has produced a file with approximately 276 unsigned leases between "Free and Clear Holding Company, LLC," Garth Johnson's non-debtor company, as landlord, and tenants, including the "Darlas." [*See, e.g.,* Exhibit 11 to the Palmer Declaration].  These leases are for 36 months, with an option to purchase the property at a reduced price.  For example,

Debtor produced the lease for the property located at 13111 Woodland Court, Hesperia, California, which the latest Amended Schedule A values at $273,840.00, but which the tenant has the option to purchase for $131,100.00, approximately 48% of the value on Amended Schedule A. [*See* Docket No. 17, p. 13 of 14; *see also* Exhibit 12 to the Palmer Declaration at p. 13 of 17]. Accordingly, the rents will be paid by the non-debtor "Darlas" to Mr. Johnson's non-debtor "Landlord" company.[7]

14. Debtor's plan is to pay secured creditors the full value of their note if the secured creditor is able to produce the original note and if it is not able to do so it will be reclassified as a general unsecured creditor and paid a 'minuscule' dividend:

MR. McDONALD: Okay. So I don't know if we talked to the diagram. So you got the Darla – the distressed homeowner that transfers her property to a land trust that then transfers 1/8 interest to Free and Clear Holding II and then Free and Clear Holding went into bankruptcy. There's about 267 of these things that have taken place that transfers to the land trust, to a separate land trust, that transfers a 1/8 interest to Free and Clear Holding II, right?

MR. JOHNSON: Correct.

MR. McDONALD: And then Free and Clear Holding II went into bankruptcy and essentially it's going to reorganize by saying, if you're a secured creditor we're going to contest your proof of claim if you don't have the supporting documents for that claim, i.e., the note, right?

MR. JOHNSON: That's correct.

MS. DiEDOARDO: The original note, that's correct.

MR. McDONALD: The original note. And if you don't have that, you're not a secured creditors and you'll go into the general unsecured creditor fund. And what's your expectation as to what general unsecureds are going to get paid? Do you know?

MS. DiEDOARDO: (Inaudible) we haven't even reached that point yet, I think.

MR. McDONALD: But it's not going to be 100 cents on the dollar.

MS. DiEDOARDO: Certainly not. No, no, sir.

MR. JOHNSON: No, sir. It's going to be a minuscule amount.

---

[7]     Debtor's counsel intends to reconvey the land, <u>post-petition</u> (after receiving Court approval) by quitclaim deeds instead of the "Grant Bargain Sale Deeds" used pre-petition and then finalize the leases. [*See* 341 Transcript pp. 30:21 - 33:12; *see also* Exhibit 13 to the Palmer Declaration ].

....

MR. McDONALD: Well, so you're going to do two things. If you don't have the original note, you're totally unsecured.

MS. DiEDOARDO: Right.

MR. McDONALD: Right? You go into the general unsecured class. If you're secured because you have the original note --

MS. DiEDOARDO: You're paid in full.

....

MR. JOHNSON: Yeah. Our tender to the creditor is to pay the full face value of the note.

....

MR. McDONALD: Okay. And that's basically the plan?

MR. JOHNSON: Yes, sir.

[341 Transcript, pp. 40:13 - 43:8]

15.  At the May 12 meeting of creditors, Garth Johnson also testified that Debtor: was created shortly before it filed bankruptcy; was created to go into bankruptcy; received distressed real property right before it filed bankruptcy; paid no money for the distressed property; has no cash flow; has huge secured debts; has very little unsecured debt; and, has no way to service that debt except for the newly transferred real property.

MR. McDONALD: Okay. All right. That's good. But you had transfers -- you had a debtor entity that was set up a month before it filed bankruptcy, right?

MR. JOHNSON: Yes, sir.

MR. McDONALD: Okay. The intent it would go in bankruptcy to do something, right?

MR. JOHNSON: Yes.

MR. McDONALD: It received distressed property the day it filed bankruptcy, right?

MR. JOHNSON: Yes, sir.

MR. McDONALD: It didn't pay any money – it didn't pay any cash for the transfer of that property, right?

MR. JOHNSON: No. No, sir.

MR. McDONALD: The property was distressed before it was transferred, right?

MR. JOHNSON: Long before it was transferred.

MR. McDONALD: And by distressed, it was real property where the lenders were foreclosing on the property, right?

MR. JOHNSON: Or potentially foreclosing at some point, pre-foreclosure.

MR. McDONALD: Okay. And that was the case for all 267 odd parcels?

MR. JOHNSON: Yes, sir.

MR. McDONALD: Okay. And right now there's no cash flow. The company doesn't have any cash flow, right?

MR. JOHNSON: Not right now, no.

MR. McDONALD: Right now there's potentially $123 million worth of secured debt that the company is liable for, right?

MR. JOHNSON: Yes, sir.

MR. McDONALD: And $15,000 worth of unsecured debt, right?

MR. JOHNSON: Yes, sir.

MR. McDONALD: Okay. And there's no way to service the debt besides the property, right?

MR. JOHNSON: That's correct.

[341 Transcript, pp. 33:13 - 35:4] Mr. Johnson also testified that Debtor has no employees:

MR. McDONALD: And what do you -- so you're the owner but there's no employees, right?

MR. JOHNSON: No, sir, not at Free and Clear II. That is correct.

[341 Transcript, p. 60:11-14]

16.  Garth Johnson testified that Debtor took the 1/8th interests in the approximately 241 properties and filed bankruptcy to keep the secured creditors from foreclosing on the property:

MR. JOHNSON: Got you. Okay. So Free and Clear II Holding Company is a bankrupt entity that puts into the Free and Clear II bankruptcy the 1/8 interest of the property from Darla Debtor --

MR. McDONALD: Darla Debtor is a fictitious name. It just means people with real property that's distressed, right?

MR. JOHNSON: That's distressed properties, yes. And it protects them from the creditors while we're going to work through our process to get the note presented, paid for or quieted.

[341 Transcript, pp. 16:17 - 17:3]

MR. McDONALD: Okay. So just so -- and the purpose of doing this transfer was essentially provide some insulation to the property so that the creditors couldn't foreclose on it, right?

MR. JOHNSON: That's correct.

[341 Transcript, pp. 35:22 - 36:1]

## JURISDICTION AND VENUE

17. The Bankruptcy Court has original and exclusive jurisdiction over Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(a). The Bankruptcy Court also has subject matter jurisdiction to adjudicate the contested matter presented by the motion pursuant to 28 U.S.C. § 1334(b) as the relief sought under section 1112(b)(1) of the Code constitutes a civil proceeding arising under the Code.

18. Adjudication of the motion constitutes a core proceeding under 28 U.S.C. 157(b)(2)(A) and (O). The filing of a motion pursuant to Bankruptcy Rule 1017(f)(1) initiates a contested matter governed by Bankruptcy Rule 9014.

19. Venue of Debtor's bankruptcy case and the contested matter presented by the motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

20. The Acting United States Trustee has standing to prosecute the motion pursuant to sections 307 and 1112 of the Code and Bankruptcy Rules 1017 and 9014. *See Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929, 930 (9th Cir. 2000) (stating that "The United States Trustee may be heard on any issue in any case or proceeding under title 11."). The Acting United States Trustee brings this motion as a result of monitoring bankruptcy cases under chapter 11 of the Code pursuant to 28 U.S.C. § 586(a)(3).

## MEMORANDUM OF LAW

21. The Acting United States Trustee requests that this case be dismissed because it has been filed in bad faith.

22. Section 1112(b) of the Code provides, in pertinent part:

> (b) (1) Except as provided in paragraph (2) and subsection ( c ), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court

> determines that the appointment under section 1104(a) of a trustee
> or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).   Section 1112(b)(4) provides that the term "cause" under section

1112(b) of the Code includes, but is not limited to, certain listed circumstances.

23.  Because the word "includes" precedes the sixteen listed examples of "cause" listed in

section 1112(b)(4), the listed examples are nonexclusive.  *See* 11 U.S.C. § 102(3).  Bad faith

filing is considered to be an additional "cause" for dismissal under section 1112. *See, e.g .,*

*Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d

127, 131-132 (6th Cir.1995); *Marsch v. Marsch (ln re Marsch)*, 36 F.3d 825, 828 (9th Cir.

1994).

24.  "The existence of good faith depends on an amalgam of factors and not upon a

specific fact." *Marsch* 36 F.3d at 828 (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986)) .

25.  In *In re Stolrow's Inc.*, 84 B.R. 167 (B.A.P. 9th Cir. 1988), the Bankruptcy Appellate

Panel for the Ninth Circuit set forth "the factors which are usually present in cases not filed in

good faith and which may be considered in a motion to dismiss for cause" including:

(1)    The debtor has only one asset.

(2)    The secured creditors' lien encumbers that asset.

(3)    There are generally no employees except for the principals.

(4)    There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.

(5)    There are few, if any, unsecured creditors whose claims are relatively small.

(6)    There are allegations of wrongdoing by the debtor or its principals.

(7)    The debtor is afflicted with the "new debtor syndrome" in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

(8)    Bankruptcy offers the only possibility of forestalling loss of the property.

*Id*. (*citing In re Hulse*, 66 B.R. 681, 682-683 (Bankr. M. D. Fla. 1986)).  "The foregoing

summary was derived from *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072-1073 (5th Cir.

1  1986), which was cited with approval in *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986)." *Id.* at

2  171 (*citing In re Hulse,* 66 B.R. 681, 682-83 (Bankr. M. D. Fla.1986).

3       26.  With regard to the "new debtor syndrome," referenced as the seventh factor above,

   the court in *In re Yukon Enterprises, Inc.* identified seven "badges" indicating the presence of

   that syndrome:

> (1)  The transfer of distressed real property into a newly created or dormant entity, usually a partnership or corporation;
>
> (2)  The transfer occurring within close proximity to the filing of the bankruptcy case;
>
> (3)  No consideration being paid for the transferred property other than stock in the debtor;
>
> (4)  The debtor having no assets other than the recently transferred, distressed property;
>
> (5)  The debtor having no or minimal unsecured debts;
>
> (6)  The debtor having no employees and no ongoing business; and
>
> (7)  The debtor having no means, other than the transferred property, to service the debt on the property.

39 B.R. 919, 921 (Bankr. C. D. Cal. 1984). *See also Antonini v. Neary (In re Gelso Investments*

*V, LLC)*, 2003 WL 22282346, No. C-03-0312-SI, at p. *5 (Bankr. N. D. Cal. Sept. 30, 2003).

       27.  The majority of the "bad faith" factors listed above are present in the record before

   the Court, making dismissal for bad faith appropriate under section 1112(b)(1):

   A.    The property Debtor holds is over-encumbered by the secured creditors' liens.

   B.    Debtor has no employees.

   C.    Debtor presently has no cash flow.

   D.    There are unsecured creditors, but the aggregate Schedule E and F debt is less

         than one percent of the amount of the aggregate Schedule D debt.

   E.    Mr. Johnson testified that the land transfers and bankruptcy were designed to

         insulate the property from foreclosure by the secured creditors.

   F.    Debtor is afflicted with the "new debtor syndrome" because (1) the property

         was transferred to the Debtor, a newly created entity, (2) the transfer of the

property and the creation of the Debtor entity was within a short period of time before the bankruptcy case was filed on April 6, 2011,[8] (3) the Debtor paid no money for the property, and (4) the Debtor has few unsecured debts, no employees, no ongoing business, and no means to service the debt except the property.

G.    The bankruptcy filing serves as the only remaining means to preserve the property, as the secured creditors were foreclosing, or about to foreclose, on the "Darlas'" properties.

H.    Finally, Debtor's principle, Garth Johnson, appears to be have set up, or stepped into control of a process whereby:  he controls hundreds of pieces of real property that he did not purchase; has transferred fractional interests in those properties to an entity created to file bankruptcy in order to prevent foreclosure by the secured creditors of those properties; will seek to satisfy only a small percentage of those creditors' claims through this bankruptcy; but also intends to charge rents from the former owners of the properties and/or resell them the properties using a non-debtor affiliate of the Debtor.

28.  The "transfer of one's assets to a new debtor on the eve of a chapter 11 filing may be evidence of such an improper state of mind and such transfers will be scrutinized with great care." *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983) (citations omitted). The court in *Yukon Enterprises* held that once the movant has established "that the transfer of the

_____

[8]    There were at least two transfers in this case, the transfer from the "Darlas" to the land trusts and the transfer from the land trusts to the Debtor.  Both transfers took place close in time to this bankruptcy and the second transfer was between entities that were both controlled by Garth Johnson, who is the trustee for the land trusts and manager and sole member of the Debtor.  Accordingly the second transfer was a "case of pure self-dealing. The transferor and transferee were in essence the same enterprise." *See In re Victory Construction Co.*, 42 B.R. 145, 149 (Bankr. C.D. Cal. 1984) (analyzing the holding of "bad faith" in *In re Thirtieth Place, Inc.*, 30 B.R. 503, 506 (9th Cir. BAP 1983) but reaching a different decision).

distressed property to the debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith. The burden, thereafter, is on the debtor to establish good and sufficient reasons why the relief should not be granted." *In re Yukon Enterprises, Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984).

29.  Once a movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor then bears the burden of proving good faith by a preponderance of the evidence. *See In re Yukon Enterprises*, 39 B.R. 919, 921-22 (Bankr. C. D. Ca1. l984); *see also In re S & S/Moab Enterprises*, 83 F.3d 428 (Table), 1996 WL 209012 at *2 (9th Cir. 1996).

30. The Acting United States Trustee has made a *prima facie* showing of bad faith, the majority of the factors demonstrating a lack of good faith are present in this case.  Accordingly, the burden of showing good faith is now on Debtor. Debtor cannot meet that burden.

**WHEREFORE**, the Acting United States Trustee respectfully requests that the Court enter an order (a) granting the motion, (b) dismissing Debtor's bankruptcy case and ( c ) granting such other and further relief as the Court deems just under the circumstances.

Dated:  June 6, 2011

Respectfully submitted,

**AUGUST B. LANDIS**
**ACTING UNITED STATES TRUSTEE**
**REGION 17**

By:  */s/ Edward M. McDonald Jr.*
　　　Edward M. McDonald Jr., Esq.
　　　United States Department of Justice
　　　Attorney for the Acting United States Trustee

# EXHIBIT A

# PROPOSED FORM OF ORDER

EDWARD M. MCDONALD JR., Attorney
State Bar # NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600 Attorney Ext. 234
Facsimile: (702) 388-6658

**Attorney for the Acting United States Trustee**
       AUGUST B. LANDIS

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**FREE AND CLEAR HOLDING COMPANY II, LLC,**<br><br><br><br>                     Debtor. | CASE NOS: BK-**S-11-15145-MKN**<br><br>Chapter 11<br><br>Date: July 13, 2011<br>Time: 9:30 a.m. (PT)<br>Place: Foley Courtroom 2 (third floor) |

## ORDER DISMISSING CASE

       Based on the *The Acting United States Trustee's Motion To Dismiss Debtor's Bankruptcy Case Pursuant To 11 U.S.C. § 1112 (b)*, the hearing held on July 13, 2011 (appearances noted on the record), the Court having stated on the record its findings of fact and conclusions of law, which are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014( c ) and

7052, and Federal Rule of Civil Procedure 52, with good cause having been shown,

**IT IS HEREBY ORDERED** that this case is **DISMISSED**.

Submitted by:

**AUGUST B. LANDIS**
**ACTING UNITED STATES TRUSTEE**
**REGION 17**

By: */s/ Edward M. McDonald Jr.*
    Edward M. McDonald Jr., Esq.
    United States Department of Justice
    Attorney for the Acting United States Trustee

## RULE 9021 DECLARATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the Court's ruling and that:

☐ The court has waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| APPROVE / DISAPPROVE | APPROVE / DISAPPROVE |
|---|---|
| _____<br>Christina Ann-Marie DiEdoardo, Esq.<br>Law Offices Of Christina DiEdoardo<br>201 Spear Street #1100<br>San Francisco, CA 94105<br><br>Counsel to Free & Clear Holding Co. II, LLC | _____<br>Amberlea Davis, Esq.<br>415 S. 6th Street, Suite 300<br>Las Vegas, NV 89101<br><br>Counsel to Free & Clear Holding Co. II, LLC |

☐ I certify that this is a case under Chapter 7 or 13, that I served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury that the foregoing is true and correct.

AUGUST B. LANDIS
ACTING UNITED STATES TRUSTEE
REGION 17

By: _/s/ Edward M. McDonald Jr._
    Edward M. McDonald Jr., Esq.
    United States Department of Justice
    Attorney for the Acting United States Trustee